IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST f/k/a THE )
JAMES H. ANDERSON LIVING TRUST; THE )
PRITCHETT LIVING TRUST; CYNTHIA W. )
SADLER; THE NEELY-ROBERTSON )
REVOCABLE FAMILY TRUST; AND THE )
LUTHER FAMILY TRUST, )
                                                                         )
                Plaintiffs, )
                                                                         )
v.                                                                               )     No.: CV-11-00959-JH/LFG
                                                                          )
XTO ENERGY, INC., )
                                                                          )
                Defendant. )

## MOTION TO CERTIFY QUESTION OF
## LAW TO THE NEW MEXICO SUPREME COURT

COMES NOW, the Plaintiffs and, pursuant to the Uniform Certification of Questions of Law Act, *N.M. Stat. Ann. §39-7-1, et seq.*, respectfully request this Court to certify a question of law to the Supreme Court of New Mexico. Specifically, Plaintiffs request that the New Mexico Supreme Court be asked to determine whether the "marketable condition rule" applies in New Mexico.[1] In further support of this Motion, Plaintiffs state as follows:

### SUMMARY OF RELEVANT FACTS

Plaintiffs (or their predecessors) executed oil and gas mining leases to Defendant. Plaintiffs' class-action litigation alleges, among other things, that Defendant has (1) failed to pay

---

[1]   Concurrently with this motion, Plaintiffs are filing virtually identical motions to certify the same question in the following cases: *Anderson Living Trust, et al. v. ConocoPhillips Company, LLC*, U.S. Dist. Court Case No. CV-12-00039-JB/KM; *Anderson Living Trust, et al. v. Energen Resources Corporation*, U.S. Dist. Court Case No. 12-CV-000352-JCH/KBM; and *WPX Energy Prod., LLC, et al.*, U.S. Dist. Court Case No. 12-CV-00040-JB/LFG.

1

the true amount of royalties owed to Plaintiffs; (2) has engaged in unlawful affiliate sales transactions which have improperly reduced royalty payments rightfully owed to Plaintiffs; (3) has breached the implied duty to market the oil and gas with reasonable diligence; (4) has violated certain provisions of the New Mexico Oil and Gas Proceeds Payment Act; 5) has tortiously breached the oil and gas leases which are the subject of this lawsuit; and 6) has been unjustly enriched by the above fraudulent and unlawful conduct, to the detriment of Plaintiffs.

Plaintiffs' allegations in their third cause of action, that Defendant has violated the implied duty to market, is specific to the duty known as the "implied covenant to market." Plaintiffs allege that Defendant has a duty to provide the produced natural gas and other hydrocarbons in marketable form at their own expense, not shared by Plaintiffs or other non-cost bearing interest owners. Plaintiffs' third cause of action alleges that by improperly charging for costs incurred in making the gas and other hydrocarbons "marketable," Defendant has breached this duty. Concomitant to the implied duty to market is the "marketable condition rule," which provides that a producer bears the costs of placing the produced product in a marketable condition. As shown below, the New Mexico Supreme Court <u>has not yet determined</u> whether New Mexico will adopt the marketable condition rule as recognized by the courts of Colorado, Oklahoma and Kansas (as well as other states) and, hence, whether a cause of action for breach of the same will lie. The Court has been provided briefs, as well as oral argument, wherein each side has given its interpretation of applicable case law and how the same, when viewed in light of other factually distinct (or vaguely similar) circumstances, supports their respective positions.

Plaintiffs assert that a common sense review of the authorities provided to this Court (both written and oral) supports the position that a claim for breach of the marketable condition

2

rule has been, at least tacitly, acknowledged by the Supreme Court of New Mexico as a viable cause of action. However, Plaintiffs contend that all of the cases dealing with this legal issue have either been predicated on grossly disparate facts[2] or been left specifically and expressly undecided by the New Mexico Supreme Court as premature or unnecessary to the particular appeal.[3]

Because the specific question of whether New Mexico will adopt the "marketable condition rule" in connection with the implied covenants of an oil and gas lease has not yet been decided, Plaintiffs respectfully move this Court to certify this question to the New Mexico Supreme Court.

## ARGUMENT AND AUTHORITIES

**Proposition I**  **The proposed question raises a novel and unsettled question of state law in which the public has a significant interest, making it ripe for certification.**

The Uniform Certification of Questions of Law Act, as adopted by the State of New Mexico, dictates when and how a question of law is certified to the Supreme Court of New Mexico. In relevant part, it states that:

---

[2] Such as the *dicta* statements found in the Tenth Circuit's interpretation of New Mexico law in *Elliott v. BP America*, 407 F.3d 1091 (10th Cir. 2005), predicated largely on the later-discounted authority of *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 858 P.2d 66 (1993), discussed more fully below.

[3] For example, *Davis v. Devon*, 2009-NMSC-048, 147 N.M. 157, 218 P.3d 75, the Court declined to address the applicability of the marketable condition rule because the validity of class certification was the only issue on appeal. Similarly, in *Ideal v. Burlington Res. Oil & Gas Co., LP*, 2010-NMSC-022, ¶ 8, 148 N.M. 228, 231, 233 P.3d 362, 365 (N.M. 2010), the Supreme Court stated, "We remand to the district court to resolve whether the marketable condition rule applies as a matter of law or because the parties may have intended it to apply. In the first case, certification was proper; in the second case, certification under Rule 1-023 (B)(3) is dependent upon the extent to which the trial court determines that individualized proof is necessary."

> The supreme court of [New Mexico] may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court **and there is no controlling appellate decision, constitutional provision or statute of this state**.

*N.M. Stat. Ann. §39-7-4.* (Emphasis added.) In *Arnold v. Farmers Ins. Co. of Arizona*, 827 F. Supp 2d 1289, 1294-1295 (D.N.M. 2011), this court recognized that under the circumstances where the substantive law of the state is applicable, the [Federal] District Court is not to reach its own judgment, but rather to ascertain and apply the state laws. At this time, *neither* the New Mexico Supreme Court *nor* the Court of Appeals has definitively decided the issue of whether the marketable condition rule will be applied as a legal doctrine, as the law of the state. Unlike the *Arnold* case, this matter is still "pending" and this court has not already decided this issue. *Arnold*, at 1297.

The decision to certify rests in the sound discretion of the federal district court. *Lehman Brothers v. Schein,* 416 U.S. 386, 391, 94 S. Ct. 1741 (1974). Certification is particularly appropriate when the legal question at issue is novel and the applicable state law is unsettled. *Id.* The explicit pronouncement by the New Mexico Supreme Court in *Davis, infra.* juxtaposed with the seemingly contrary earlier holding in *Elliott*, highlights the uncertain and unsettled question of whether the marketable condition rule applies as a legal doctrine to all private owners of royalty under oil and gas leases in New Mexico.[4] The resolution of this question will determine a key issue in this matter and ultimately affect thousands of mineral owners, in this case and others, and therefore clearly meets the requirement of significant importance to the public.

---

[4] The owners include all non-cost bearing interests, which are privately owned. These interests include overriding royalty interests under oil and gas leases granted by governmental entities.

As noted by this Court in *Radian Asset Assurance, Inc. v. College of the Christian Bros. of N.M.,* 2011 U.S. Dist. LEXIS 14437, federal district courts must "follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Id.,* ¶ 44 (citing *Stoner v. New York Life Ins. Co.,* 311 U.S. 464, 61 S. Ct. 336 (1940)). *See also* this Court's ruling in *Rimbert v. Eli Lilly & Co.,* 577 F. Supp. 2d 1174 (D.N.M. 2008), in which the Court held that the New Mexico Supreme Court rules regarding certification procedures are worded to provide other courts an interpretation of New Mexico law when there is no controlling appellate case from New Mexico. Unfortunately, there are no such intermediate appellate decisions addressing the application of marketable condition rule as a "legal doctrine" in New Mexico. Hence, the concerns found in *Radian Asset Assurance* and *Rimbert* are not present herein.

It is not necessary that the question certified result in a disposition of the federal court litigation. A pre-judgment question can be answered as long as it resolves some question/dispute not previously decided under New Mexico law. In *Schlieter v. Carlos,* 108 N.M. 507, 775 P.2d 709 (1989), the defendants resisting certification argued that the court lacked jurisdiction because the questions certified were not "determinative" in the sense that the answers would not determine the existence of a cause of action, nor put an end to litigation in that case. In rejecting this premise, the Court held:

> Contrary to the construction urged by defendants, Rule 12-607 does not contemplate a showing of no genuine issue as to any material fact to the end that our pretrial answer to novel questions of New Mexico law would be "determinative" in this narrow sense. For example, in *United States v. Martinez, 101 N.M. 423, 684 P.2d 509 (1984),* we held that a New Mexico judge could represent himself in criminal proceedings without engaging in the practice of law as proscribed by the Canons of Judicial Conduct. This holding, although determinative of a major procedural

> question, *i.e.*, who would conduct the defense at trial, was not dispositive of the existence of a claim or defense on the merits and did not put an end to the criminal proceedings.

*Id.* at 711. In the present case, the determination of whether or not the "marketable condition rule" applies as a legal doctrine in New Mexico is clearly subject to certification by this court.

**<u>Proposition II</u>**     **The Supreme Court of New Mexico has not decided the issue of whether the Marketable Condition Rule applies in New Mexico, making it appropriate for this Court to certify a question of law regarding same.[5]**

It is anticipated that Defendant will urge that the earlier *Elliot* decision by the Tenth Circuit has already purportedly held that the marketable condition rule does not apply in New Mexico. While *Elliott* contains *dicta* for that proposition (since the *Elliott* court had already determined that the Plaintiffs' cause of action for implied covenants failed on other grounds), *Elliot's* conclusion is heavily predicated on two other factually dissimilar cases, *Continental Potash, supra,* and *Creson v. Amoco Prod. Co.*, 2000-NMCA-081, 129 N.M. 529, 10 P.3d 853.

Looking first at *Continental Potash,* it bears noting that it was a case involving a mining contract (as opposed to an oil and gas lease) and the alleged implied covenant involved an issue ("high grading") was discussed in express terms of the subject contract. The court in *Continental Potash* held that, while there may be implied covenants owed by a lessee in the absence of an express covenant, the express language in the instant mining lease precluded and superceded any implied obligation regarding "high grading" mining operations. *Continental Potash,* 115 N.M. at 706, 858 P.2d at 82. The *Elliott* court interpreted this decision as negating the marketable condition rule, even though the actual holding of *Continental Potash* was limited to a rejection of implied covenants when express contract provisions are available.

---

[5] Plaintiffs note that this Proposition is largely duplicative of their supplemental brief to the Court regarding the *Elliott* decision following oral argument on Defendant's Motion to Dismiss.

*Elliott* also made extensive citation(s) to *Creson, supra.*, stating that:

> The district court did not err in relying on *Creson* for guidance in determining the meaning of "at the well. (*Elliott, 407 F.3d at 1110*).
>
> . . .
>
> The *Creson* court therefore appeared to see no difference between the terms "net proceeds" and "market value,' but rather focused on the fact that the "at the well" language means that post-production costs are deducted from the value of the processed carbon dioxide gas in arriving at the proper royalty valuation. *Id.*

The *Elliott* court recognized that the key deciding factual issues in *Creson* were not disputed." *Id.* 1110-1111; specifically, the plaintiffs in *Creson* "conceded that the carbon dioxide was marketable at the wellhead." *Id.* at 1111. Unlike in *Creson*, Plaintiffs herein do *not* so stipulate and have alleged that the physical properties of the hydrocarbons produced from their wells, or any of the wells that are included in the proposed class definition, are "not marketable at the wellhead." See Plaintiffs' First Amended Complaint, ¶¶ 43-48 [Doc. 4]. At the heart of the marketable condition rule is the factual determination of when the hydrocarbons become "marketable." Because the parties in *Creson* had stipulated themselves out of this inquiry, the decision provides no precedential value to support the Defendant's theory that the marketable condition rule is simply not applicable in New Mexico.

Four years after *Elliott* was decided, in 2009, the New Mexico Supreme Court was called upon to decide certain class-certification issues in *Davis v. Devon,* 2009-NMSC-048, 147 N.M. 157, 218 P.3d 75. In a class action case with similarities to the one at bar, the Court was asked to review the trial court's rulings regarding Rule 1-023(B)(2) and B(3), *NMRA*, class certifications. The trial court had already ruled on summary judgment that "under the implied duty to market, the marketable condition rule applies in New Mexico," and the Supreme Court accepted that

7

"interlocutory ruling of the district court as applicable." *Davis*, ¶ 14, 147 N.M. at 162, 218 P.3d at 80. Because the trial court's initial ruling regarding the application of the marketable condition rule was not then ripe for appeal, the Supreme Court specifically avoided addressing the issue stating:

> [N]othing in this opinion should be construed as either the recognition or disapproval of the marketable condition rule, its scope, or its applicability.

*Id.*, ¶ 15, 147 N.M. at 163, 218 P.3d at 81.

While the court in *Davis* did not determine whether or not the marketable condition rule applied in New Mexico, it *did* decide that, as a matter of law, the reasoning used in the *Continental Potash* decision (relied on by the *Elliott* court in denying the existence of the marketable condition rule) was inapplicable to the marketable condition rule, when claimed as an implied legal duty. The Court stated:

> *Continental Potash* applies to the process of interpreting an agreement and its surrounding circumstances to effectuate the parties' intentions, not to the implication of a legal duty controlling the parties' conduct. *Continental Potash* held that the defendants did not have an implied duty to blend different grades of potash and refrain from "high-grading" the mined potash, because "the express provisions in the contract according the defendants exclusive discretion and control in the mining operations left no room for the implied covenants that the trial court enforced against [them]. (Internal citation omitted). By looking to the express provisions of the parties' contract, this Court determined that the parties intended that the defendants would have exclusive control over certain mining operations. *Continental Potash at 705.* Thus, the Court held that these implied covenants could not be implied as legal duties as a matter of law. *Id at 705-06.* **As a result, the analysis set forth in *Continental Potash* only applies to those promises that may be implied because the parties intended them. Its analysis does not apply to covenants that impose legal duties upon contracting parties as a matter of law.**

\*     \*     \*

8

> **In this way, *Continental Potash* is inapplicable to the implication of the marketable condition rule as announced by the district court in this case.** The district court ruled that "*under the implied duty to market,* the marketable condition rule applies in New Mexico." In *Darr*, this Court recognized the implied covenant "to make diligent efforts to market the production in order that the lessor may realize on his royalty interest." *66 N.M. at 263, 346 P. 2d at 1044* (internal quotation marks and citations omitted); *see also Libby v. De Baca, 51 N.M. 95, 99, 179 P.2d 263, 265 (1947)* (recognizing the lessee's duty to "proceed with reasonable diligence, as viewed from the standpoint of a reasonably prudent operator, having in mind his own interest as well as that of the lessor, to market the product") (citation omitted). We implied this legal duty on oil and gas produces in equity, without looking to the language of the agreements or other evidence of the parties intentions. *Darr, 66 N.M. at 264, 346 P.2d at 1044*. Therefore, given the district court's conclusion that the duty to market, which applies in equity irrespective of the parties' intentions, incorporates the duty to put CBM gas in a marketable condition (a conclusion we do not review in this opinion), **the requirements of *Continental Potash* are likewise inapplicable to a determination of whether the marketable condition rule may be implied in each royalty agreement.**"

*Davis*, 2009-NMSC-048, ¶¶ 34-35, 147 N.M. at 167-68, 218 P.3d at 85-58 (italics in original, bold emphasis added).

So while the New Mexico Supreme Court in *Davis* avoided a decision on the existence of the marketable condition rule, as urged by the Plaintiffs herein, it *specifically* held that the *Continental Potash* decision is inapplicable and irrelevant to the determination of the issue. Once this vital distinction was clarified, the very foundation of *Elliott's* determination crumbled, *i.e.*, that the New Mexico courts did not embrace the marketable condition rule imposed as a legal duty. The New Mexico Supreme Court made clear that the holding of *Continental Potash* was limited.

9

The *Davis* Court also did not address how its distinction of *Continental Potash* would effect the *Elliot* decision, simply because it was not necessary to do so. It is noteworthy that prior to its conclusions about the application of the implied covenant to market, the *Elliott* court had already expressly determined that, without a breach of contract claim, any attempt to assert implied duties by the plaintiffs therein failed as a matter of law. *Elliott,* 407 F.3d at 1113. As stated above, the further analysis engaged in by the *Elliott* court was therefore mere *dicta*. *Elliott* is clearly not truly indicative of New Mexico law on this issue, as illustrated by the following express findings of the *Davis* Court:

> [T]hey each assume that the marketable condition rule applies in New Mexico. For the purposes of our review, we accept this interlocutory ruling of the district court as applicable in each case, and we <u>do not address</u> the existence of the marketable condition rule in New Mexico or its applicability in any of these cases. (Emphasis added)
> . . .
> Thus, the question of whether and under what circumstances the marketable product rule applies in New Mexico is not ripe for review at this time.
> . . .
> Therefore, nothing in this opinion should be considered as either the recognition or disapproval of the marketable condition rule, its scope, or its applicability.

*Davis,* 2009-NMSC-048, ¶ 14, 147 N.M. at 80, 218 P.3d at 261. Because the question sought to be certified is unsettled under New Mexico law, it is appropriate for this Court to certify the question to the New Mexico Supreme Court.

**Proposition III**    ***ConocoPhillips v. Lyons*, currently pending before the New Mexico Supreme Court, while involving the implication of the marketable condition rule, involves State leases and will not be dispositive of the question sought to be certified.**

It is anticipated that Defendants will also urge this Court to deny the request for certification on the basis that there is currently an appeal before the New Mexico Supreme Court which involves the marketable condition rule. However, because the appeal is limited to the interpretation of State statutory leases, it is unlikely that it will resolve the issue of whether the marketable condition rule applies to the thousands of owners of royalty interests, such as those implicated herein.

The case of *ConocoPhillips Company, et al. v. Patrick Lyons,* S. Ct. Case No. 32,624, is an interlocutory appeal currently pending before the New Mexico Supreme Court and arises out of the terms of an oil and gas lease(s) executed, pursuant to state statute, by the Commissioner of Public Lands of the State of New Mexico. Because the New Mexico Legislature dictated those terms to be included in any oil and gas lease inuring to the benefit of the State, it is factually different than the case at bar. The appeal involves issues as unique as whether the Commissioner exceeded his power in issuing assessments against defendant companies; the definition of "net proceeds" as set forth in the statutory lease; and the impact of the economic and political climate in New Mexico in 1947 when the current version of the State statutory lease was enacted. The Commissioner, appellant in that proceeding, is asking that the marketable condition rule be applied to the lease in the event the Court deems the statutory lease term "net proceeds derived from the sale of such gas *in the field"* to mean the same thing as *"at the wellhead,"* which is the typical language contained in private leases such as those present in this case. The Supreme Court will first decide, as required by *Continental Potash* and *Creson,* whether the subject leases

11

contain express provisions which adequately define the parties' obligations regarding royalty payments and appropriate field deductions, if any. The ultimate opinion of the New Mexico Supreme Court, whether affirming *or* disavowing the marketable condition rule, may be limited to the unique facts surrounding the statutory leases.

In fact, the defendant gas producer argued to the Court in *Lyons* that it would be inappropriate for the Court to rule on the application of the marketable condition rule. In oral arguments held on November 15, 2010, after counsel for the Appellant responded to a question about the difficulty in determining when the product becomes marketable, counsel for the Appellee[6] replied as follows:

> Well, your Honor, let me first suggest that in our view, it would not be appropriate for this Court sitting as an appellate tribunal to, on its own, on the record before the Court, pronounce — pronounce that from henceforth on, the market condition rule applies in New Mexico. It is our view that there is a process involved for a Court to impose an implied condition on the producer. That process is first that the Courts must look at the contract language the parties themselves use and determine whether the parties themselves have agreed to the royalty calculation method. The net proceeds obligation that we have here is clear and unambiguous. It is not silent as the [inaudible] allocate.

Because the issues to be decided in the *Lyons* appeal are different in substance than the question herein sought to be certified, *i.e.*, private party oil and gas leases, the existence of that pending matter should not act as a bar to this Court's certification of the question of whether or not New Mexico will apply the marketable condition rule in the context of privately owned royalty interests.

---

[6] Michael Campbell, counsel for ConocoPhillips Company, LLC, in the companion case *Anderson Living Trust, et al. v. ConocoPhillips Company, LLC,* No. 12-CV-00040 JB/LFG, argued on behalf of Appellee/Plaintiff in the *Lyons* matter.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that this Court grant their Motion to Certify, and for such other and further relief as this Court deems necessary.

Respectfully submitted,

Dated: June 29, 2012

BRANCH LAW FIRM

By /s/ *Turner W. Branch*
Turner W. Branch
Cynthia L. Zedalis
2025 Rio Grande Blvd. NW
Albuquerque, NM 87104
(505) 243-3500 - Telephone
tbranch@branchlawfirm.com

BRICKELL & ASSOCIATES, P.C.

By /s/ *Bradley Brickell*
Bradley Brickell
1014 24th Ave N.W. Suite 100
Norman, OK 73069
(405) 360-0400 - Telephone
bbrickell@bradbrickell.com

Karen Aubrey
LAW OFFICE OF KAREN AUBREY
P.O. Box 8435
Santa Fe, NM 87504
(505) 982-4287 - Telephone
ka@karenaubreylaw.com

Brian K. Branch
LAW OFFICE OF BRIAN K. BRANCH
902 Roma, NW
Albuquerque, NM 87102
(505) 764-9710 - Telephone
bbranch@bkblaw.net

*ATTORNEYS FOR PLAINTIFFS*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 29th day of June 2012, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mark F. Sheridan
MSheridan@hollandhart.com

Michael H. Feldewert
MFeldewert@hollandhart.com

Julia Broggi
JBroggi@hollandhart.com


By */s/ Turner W. Branch*