IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST f/k/a THE
JAMES H. ANDERSON LIVING TRUST; THE
PRITCHETT LIVING TRUST; CYNTHIA W.
SADLER; THE NEELY-ROBERTSON
REVOCABLE FAMILY TRUST;

       Plaintiffs,

v.                                                                CIV 11-0959 JCH/LFG

XTO ENERGY, INC.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Plaintiffs'

First Amended Complaint for Underpayment of Oil and Gas Royalties *(Doc. 28)*.  Having

reviewed the parties' submissions and the relevant law, the Court finds the Motion is well-taken

and will therefore grant the Motion.

## Background

Plaintiffs are owners of interests in hydrocarbons in the State of New Mexico.  *See Doc.*

*4* at ¶¶ 1-5.  They claim that either they or their predecessors executed oil and gas leases and/or

permits with Defendant or its predecessors, and that they each own a non-cost-bearing interest in

revenues derived from the production and sale of hydrocarbons under such leases or permits.

*See id.* at ¶¶ 9-10.

Initially, Plaintiffs do not identify specific leases or wells at issue, referring broadly to

"all wells within the State of New Mexico in which XTO owns all or a portion of the oil and gas

leases."  *See id.* at ¶ 10.  As part of their first cause of action for "failure to pay royalty on

volumes of hydrocarbons, including drip condensate," Plaintiffs identify four leases at issue: (1)

a December 9, 1947 lease between Lessors M.L. Faverino and Mary Faverino, husband and wife, and John R. Anderson and Gerogia Fay Anderson, husband and wife to Lessee C.H. Nye; (2) an October 13, 1923 lease between Lessor United States Land Office, Department of the Interior and Lessee Dr. J.F. Day; (3) a July 1, 1951 lease between Lessor State of New Mexico and Lessee L.N. Hagood; and (4) an October 8, 1994 lease between Lessor Bonnie Harris Luther and Lessee Robert L. Bayless. *See id.* at ¶ 24. Plaintiffs do not describe how they derive their respective interests in the subject leases or the source or extent of Defendant's duties under the leases. *See generally id.* No contract language is quoted in the Amended Complaint. *See generally id.*

Plaintiffs nonetheless contend that Defendant XTO has failed to properly pay royalties to them. *See id.* at ¶¶ 21-26. In particular, they assert that "XTO has continually failed to credit revenues to Plaintiffs representing the value of [] produced drip condensate" as well as "[o]ther volumes of natural gas [which] may be used or consumed 'in the field' by XTO or its assignor and not reported (or paid) to Plaintiffs or the Class." *Id.* at ¶ 26. For their second cause of action, Plaintiffs allege "fraud and misstatement of value of gas and affiliate sales." *Id.* at 9. This claim is based upon Defendant's alleged violation of duties "arising under the Leases and applicable state law" to avoid selling or transferring hydrocarbons to affiliated entities, who allegedly "realize a higher value for the hydrocarbons than is reported to Plaintiffs." *Id.* at ¶¶ 29-30. In Count III, Plaintiffs allege breach of the duty to market hydrocarbons, without deducting production expenses related to dehydration, compression, or other treatment and/or processing necessary to render hydrocarbons marketable. *See id.* at 12-14. Plaintiffs' fourth cause of action is for alleged violation of the New Mexico Oil and Gas Proceeds Payment Act. *See id.* at 15. Fifth, Plaintiffs claim bad faith breach of contract. *See id.* at 16. Sixth, Plaintiffs

allege unjust enrichment and seek declaratory relief.  *See id.* at 17.  Plaintiffs' seventh and final

cause of action is for "conversion of the proceeds from the sale of [] hydrocarbons."  *Id.* at 18, ¶

71.

## Legal Standard

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The

plausibility standard adopted in Twombly and further explained in *Ashcroft v. Iqbal*, 556 U.S.

662 (2009), requires plaintiffs to "offer specific factual allegations to support each claim."

*Burnett v. Mortgage Elec. Registration Sys., Inc.*, ___ F.3d ___, 2013 WL 386283, at *2 (10th

Cir. Feb. 1, 2013) (quoting *Iqbal*).  "The complaint must offer sufficient factual allegations 'to

raise a right to relief above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

"[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support

of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this*

plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red*

*Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

Although the Court must assume the truth of the properly alleged or "well-pleaded," facts in the

Complaint, the Court has no obligation to accept conclusory allegations at true.  *See Cory v.*

*Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

"Determining whether a complaint states a plausible claim for relief is 'a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense.'"

*Burnett*, 2013 WL 386283, at *2 (quoting *Iqbal*, 556 U.S. at 679).  "This contextual approach

means comparing the pleading with the elements of the cause(s) of action." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)).  Plaintiffs need not "set forth a prima facie case for each element, [but he or] she is required to set forth plausible claims animating the elements" of the pled cause of action. *Id.*  "Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Id.* (quoting *Iqbal*).

**<u>Analysis</u>**

Defendant argues that Plaintiffs' Amended Complaint should be dismissed in its entirety for failure to state a cognizable claim. *See generally Doc. 4.*

**I.    Plaintiffs Have Not Sufficiently Alleged Either the Existence or Breach of Any Contract; Therefore, Count I Will Be Dismissed.**

The source of the alleged duty to "pay royalty on volumes of hydrocarbons, including drip condensate" is contractual. *See Doc. 4* at ¶ 25 ("XTO's duties under the Leases include paying royalties on the value of drip condensate").  The elements of a breach of contract claim are "the existence of the contract, breach of the contract, causation, and damages." *Abreu v. N.M. Children, Youth and Families Dep't*, 797 F.Supp.2d 1199, 1247 (D.N.M. 2011) (citing *Camino Real Mobile Home Park P'ship v. Wolfe*, 119 N.M. 436, 442, 891 P.2d 1190, 1190 (1995)).  Yet, Plaintiffs have not sufficiently alleged either the existence of any contract between Plaintiffs and Defendant XTO or the breach thereof.

There are five named Plaintiffs in this case, including four trusts and one individual. While one might assume that the first lease identified by Plaintiffs, involving Lessors John R. Anderson and Gerogia Faye Anderson, husband and wife, is somehow related to Plaintiff Anderson Living Trust f/k/a the James H. Anderson Living Trust, there are no facts alleged allowing the Court to reasonably infer that Anderson Living Trust is a party to that Lease. Similarly, while another lease identifies Bonnie Harris Luther and this case involves Plaintiff

4

Luther Family Trust, Plaintiffs have not alleged facts from which the Court may reasonably infer that the Luther Family Trust is a party to the lease involving Bonnie Harris Luther.  There are no facts whatsoever connecting the remaining Plaintiffs or Defendant XTO to any of the four identified leases.

Along the same lines, Plaintiffs fail to plead facts related to Defendant's contractual duties.  Plaintiffs broadly assert that they are entitled, under the terms of the Leases identified, "to a certain fractional percentage of the revenue from the production, use, and sale of oil and gas and other hydrocarbons produced thereunder."  *See Doc. 4* at 8.  But Plaintiffs do not include any language from these leases.  As Defendant points out, "[w]hether royalties are owed on the value of products extracted downstream depends on the meaning of the specific royalty provision."  *See Doc. 28* at 8 (citing *Creson v. Amoco Prod. Co.*, 10 P.3d 853 (N.M. Ct. App. 2000)).  The Amended Complaint does not indicate what type of interest Plaintiffs own or the percentage interest owed by Defendant.

Additionally, Plaintiffs do not allege facts relating to Defendants' alleged breach.  They claim very generally that "XTO has continually failed to credit revenues to Plaintiffs representing the value of [] produced drip condensate."  *See Doc. 4* at 8, ¶ 26.  Plaintiffs also contend that either XTO or its assignees "may" have used or consumed additional amounts of natural gas in the field.  *See id.*  But Plaintiffs do not plead any facts regarding instances of XTO's alleged failures to credit revenues or use of gas in the field.  *See id.*  Plaintiffs do not identify individuals involved or circumstances that alerted them to potential breaches by XTO.  *See id.*  In short, there is no factual narrative explaining why Plaintiffs believe that a breach of contract occurred.  *See id.*

Earlier this year, the Western District of Oklahoma granted a motion to dismiss a breach of contract claim in a very similar case, noting

> that to state plausible claims for breach of oil and gas leases by breach of the duty to market implied therein under *Twombly, supra,* [p]laintiffs must identify or describe their individual leases in which [d]efendant … is the lessee or successor lessee or attach copies thereof and describe the royalty terms thereof so as to raise the existence of leases between the individual [p]laintiffs and [d]efendant … and alleged breach by [d]efendant of the implied duty to market and thus [p]laintiffs' right to relief beyond the speculative level.

*Hitch Enter., Inc. v. Cimarex Energy Co.*, 859 F. Supp.2d 1249, 1257 (W.D.Okla., March 20, 2012) (quoting *Chieftain Royalty Co. v. Dominion Okla. Texas Exploration & Prod., Inc.*, No. CIV-11-344-R (W.D.Okla., July 14, 2011) (unavailable on Westlaw)).  While it may not be necessary for parties to attach a copy of the subject contract in every case, the nature of the parties' relationship and the contractual method of calculating royalties together with some facts in support of the alleged breach should be clearly set forth.

Defendant in the present case relies upon *Parrish v. Nat'l Football League Players Assn.*, 534 F.Supp.2d 1081, 1094-95 (N.D. Cal. 2007).  *See Doc. 28* at 7.  Plaintiffs in that case were retired NFL players who sought benefits of the defendant's group licensing agreements (GLAs), or agreements with third parties to license images, likenesses, and names of retired players.  534 F.Supp.2d at 1086-87.  Defendant successfully moved to dismiss the complaint because the plaintiffs had not alleged that they had signed GLAs within the four-year statute of limitation. *See id.* at 1088.  The court in *Parrish* held that although the complaint contained language from three different GLAs, the plaintiffs "never alleged that any of them signed that particular form of agreement."  *Id.* at 1095.  Thus, the plaintiffs in *Parrish* failed to allege the existence of a contract.

Defendant also refers the Court to an unpublished decision from this District, *Armijo v. State*, Case No. CIV 08-0336 JB/ACT, 2009 WL 1329192 (D.N.M., Apr. 6, 2009), wherein the Honorable James O. Browning dismissed a claim for breach of employment contract. *See Doc. 28* at 9. Judge Browning noted that the Plaintiff had failed to plead facts alleging "to what his employment contract entitles him or of what the Department deprived him." *Id.* at *7. In other words, the Plaintiff "fail[ed] to lay out a minimal factual narrative to apply in reaching [the pled] legal conclusions." *Id.*

Although the present case involves slightly different facts, the principles in *Parrish* and *Armijo* apply nonetheless. Like the plaintiffs in *Parrish*, Plaintiffs in the present case have failed to identify applicable contractual language governing the alleged duties and breaches. As a result, it is not clear what, if any, contractual duties are owed. Plaintiffs in the present case, like the plaintiff in *Armijo*, have not pled a factual narrative to support their claims for relief.

## II.    Plaintiffs' Allegations of Fraud Do Not Satisfy the Requirements of Fed. R. Civ. P. 8(a)(1) or 9(b), and Count II Must Therefore Be Dismissed.

Plaintiffs contend that in certain, unspecified, instances, "XTO has failed to disclose the gross volume of gas produced from Plaintiffs' wells, the gross revenue or value attributed to the gross production, as well as all reductions and/or deductions and costs to Plaintiffs which are reducing Plaintiffs' revenues from the point of an arms-length sale." *See Doc. 28* at 10, ¶ 35. Plaintiffs allege that such actions were "in knowing violation of the legal duties imposed upon XTO by both statute and common law" and constitute "a willful violation of XTO's legal duties as the operator, lessee and/or disbursing agent." *Id.* at 11, ¶ 35.

Plaintiff is required to "state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Therefore, "[t]he complaint must 'set forth the time,

place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Heavy Petroleum Partners, LLC v. Atkins*, 457 Fed.Appx. 735, 742-43 (10th Cir. 2012) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)).  Put another way, "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

The Court finds Plaintiffs' allegations of fraud do not contain the required particularity nor sufficient allegations to render the claim plausible.  Plaintiffs do not plead any dates or involved parties and do not provide the contents of any specific misrepresentation.  Moreover, the Court finds it clear from Plaintiffs' request for data going back to the first arm's length sale of hydrocarbons from each well that Plaintiffs have yet to isolate any particular misrepresentation or act of concealment.  *See Doc. 4* at 11, ¶ 38.  "Where the well-pleaded facts 'do not permit the court to infer more than the mere possibility of misconduct, the complaint … has not shown that the pleader is entitled to relief.'"  *Rehnberg v. OfficeMax, Inc.*, Case No. CIV 11-0645 WJ/RHS, 2011 WL 7609023 at *2 (D.N.M., Nov. 23, 2011) (quoting *Iqbal*, 556 U.S. at 679).  Count II will therefore be dismissed.

### III.    Plaintiffs Have Not Pled Sufficient Facts to Render Count III Plausible.

Plaintiffs contend that under the terms of the lease as well as New Mexico law, Defendant had a duty to render all hydrocarbons produced—including NGLs such as ethane, propane, and butane—marketable.  *See* Doc. 1-1 at ¶¶ 41-42.  According to Plaintiffs, the implied duty of marketability further requires Defendant to render NGLs marketable on its own,

without passing the cost of rendering hydrocarbons marketable on to non-cost bearing interest holders such as Plaintiffs.  *See id.* at ¶¶ 43-44.

Defendant argues that Count III fails to state a cognizable claim and should be dismissed. To the extent that Plaintiffs argue the duty of marketability arises from the facts, i.e., the language of the leases between the parties and/or the parties' intent at the time the leases were signed, Defendants point to *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 701, 858 P.2d 66, 77 (1993).  In that case, the New Mexico Supreme Court held that, "[t]he general rule is that an implied covenant cannot co-exist with express covenants that specifically cover the same subject matter."  *Cont'l Potash*, 858 P.2d at 80.  For an implied covenant to an existing contract to be deemed valid, it "must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it."  *Id.*  Because there are no allegations in the Complaint concerning the parties' intent and no specific references to the text of the leases, Defendant contends that Plaintiffs' Count III is not a plausible claim for relief.  *See* Doc. 4 at 13-14.

Count III contains the following allegations relevant to Plaintiffs' claim of duty implied-in-fact:

> 41.    Under the terms of the Leases, XTO has a duty and covenant to market production to the mutual advantage of both the lessee and Plaintiffs.
> 42.    Under the mutual covenants and obligations contained in the Leases and/or under state law, XTO has a duty to market condensate, natural gas, natural gas liquids and all other products derived from the hydrocarbons produced, in order to obtain the highest possible price to the mutual advantage of XTO and Plaintiffs.
> . . .
> 44.    Under its duty to market, XTO, as a mineral lessee, has an obligation to make diligent efforts to market the production from

the subject leases in order to allow the royalty owner to realize
fully in his royalty interest(s).

45.      XTO, as a lessee and working interest owner in the Class
wells, has a duty to render the natural gas and other hydrocarbons
marketable at its own expense, and not at the expense of Plaintiffs
and other non-cost bearing interest owners.

*Doc. 4* at 12-13.  Although a claim for breach of a duty implied-in-fact requires reference to the

parties' intent as demonstrated through their negotiations, Plaintiffs' Complaint contains no facts

in this regard.  Plaintiffs' complaint is limited to conclusory allegations that Defendant owes

certain duties.  There are no factual allegations as to the parties' negotiations or resulting

contractual terms.  While it is not necessary for Plaintiffs to plead facts which cannot be known

without the benefit of discovery, Plaintiffs do not provide any supporting factual narrative that

would render their implied-in-fact allegations plausible.  Consequently, Plaintiffs' claims for

breach of the implied-in-fact duty to market, if any, will be dismissed.

        Plaintiffs may never have intended to assert a claim for breach of an implied-in-fact duty

to market hydrocarbons, preferring instead to rely upon an implied-in-law duty to market

hydrocarbons.  The New Mexico Supreme Court recently recognized that there are two ways a

contractual term may be implied.  *See Davis v. Devon Energy Co.*, 147 N.M. 157, 167, 218 P.3d

75, 85 (2009).  "[C]ourts may either be effectuating the parties' intentions by interpreting the

written terms of an agreement and analyzing the parties' conduct," in which case the principles

enunciated in *Continental Potash* would apply, or, courts "may be stating that a duty imposed by

law creates an obligation on one or more of the parties to the agreement."  *Id.*  Looking to its

earlier opinions concerning the implied duty to market hydrocarbons in *Darr v. Eldridge*, 66

N.M. 260, 263, 346 P.2d 1041, 1044 (1959) and *Libby v. De Baca*, 51 N.M. 95, 99, 179 P.2d

263, 265 (1947), the New Mexico Supreme Court held, "[w]e implied this legal duty on oil and

gas producer in equity, without looking to the language of the agreements or other evidence of

10

the parties' intentions."  The implied duty to market hydrocarbons is therefore implied into each royalty agreement, regardless of the parties' intent, as a matter of law.  *See Davis*, 147 N.M. at 167-68, 218 P.3d at 85-86.  Further, "*Continental Potash* is inapplicable to the implication of the marketable condition rule."  *See id.* at 167-68, 218 P.3d at 85-86.

Defendant argues that Plaintiffs' claim for breach of the implied-in-law duty to market should be dismissed based on *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091 (10th Cir. 2005).  *Elliott* involved claims by royalty owners like Plaintiffs against producers, like Defendant XTO, arguing that producers should not reduce their royalty payments by subtracting fees for processing gas.  *See id.* at 1100.  The plaintiffs in *Elliott*, like Plaintiffs in the present case, based their argument upon the implied duty to market.  *See id.* at 1113.  The Tenth Circuit affirmed summary judgment in favor of the defendant producers, holding as follows

> Elliott contends that under the implied duty to market Appellees bear the burden of all costs incurred to put the gas in a marketable condition including the cost of removing the NGLs from the gas. Thus, Elliott argues any 39% processing fee should not be borne by the royalty owners.  This conception of the implied duty to market finds no support within New Mexico case law.  Nor is the claim saved by Elliott's assertion that the 39% fee is a production cost that must be borne by Appellees because there is no market for the unprocessed gas at the wellhead.  This duty imagined by Elliott is inconsistent with New Mexico law because the express terms of the royalty obligations direct the royalty to be paid on the value of the gas "at the well."  *See Cont'l Potash*, 855 P.2d at 80 (no implied covenants when subject matter addressed in contract); *Creson* [*v. Amoco Prod. Co.*, 129 N.M. 529], 10 P.3d [853,] 856, 859 (marketability goes to issue of compliance with royalty obligations).

*Id.* at 1113-114.  Whereas *Elliott* runs contrary to Plaintiffs' claims, its reasoning is based on *Continental Potash*, indicating that its primary precedential value exists as applied in cases concerning the implied-in-fact duty to market and not cases like this one, which concern the implied-in-law duty to market.  Whether or not the implied-in-law duty to market, recognized by

11

the New Mexico Supreme Court in *Davis*, requires oil and gas producers to process

hydrocarbons at their own expense, without passing costs on to non-cost-bearing interest owners

is an open question under New Mexico law.

In the present case, however, Plaintiffs have not pled sufficient facts to render their

entitlement to royalty payments plausible. *See* Part I, *infra*. Therefore, the Court must dismiss

Plaintiffs' Count III in its entirety.

> ### IV.     Plaintiffs Fail to State a Cognizable Claim For Violation of the New Mexico Oil and Gas Proceeds Payment Act.

New Mexico law requires payment to Plaintiffs within "forty-five days after the end of

the calendar month within which payment is received by payor for production." NMSA 1978, §

70-10-3. The Tenth Circuit has held that in order to maintain a cause of action under the Act, a

plaintiff must "allege a potentially successful claim for underpayment of royalties or theory of

liability showing that it is 'legally entitled to such payments.'" *Elliott*, 407 F.3d at 1120 (quoting

NMSA 1978, § 70-10-3). Because Plaintiffs' other claims should all be dismissed pursuant to

the instant Motion, Defendant contends Plaintiffs' claim under the Act should also be dismissed.

*See* Doc. 28 at 33 (quoting *Elliott*, 407 F.3d at 1120). The Court agrees and will therefore

dismiss Count IV.

> ### V.     Plaintiffs Have Not Alleged Facts Sufficient to Support Their Claim for Bad Faith Breach of Contract.

"Whether express or not, every contract imposes upon the parties a duty of good faith and

fair dealing in its performance and enforcement." *Bourgeous v. Horizon Healthcare Corp.*, 117

N.M. 434, 438, 872 P.2d 852, 856 (1994). "[T]he implied convenant of good faith and fair

dealing requires only that neither party injure the rights of the other party to receive the benefit

of their agreement." *Smoot v. Physicians Life Ins. Co.*, 135 N.M. 265, 268, 87 P.3d 545, 548 (Ct.

App. 2003). It is breached "only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Azar v. Prudential Ins. Co.*, 133 N.M. 669, 685, 68 P.3d 909, 925 (Ct. App. 2003). As a matter of New Mexico law, however, "a cause of action for breach of the covenant of good faith can normally arise only out of a contract." *City of Raton v. Ark. River Power Auth.*, 611 F.Supp.2d 1190, 1199 (D.N.M. 2008). Because Plaintiffs in the present case have not sufficiently alleged the existence of a contract, *see* Part I, *infra*, the Court must dismiss this claim.

### VI.    Unjust Enrichment Is Not Available As A Remedy.

"To prevail on a claim for unjust enrichment, 'one must show that: (1) another has been knowingly benefitted at one's expense; (2) in a manner such that allowance of the other to retain the benefit would be unjust.'" *City of Rio Rancho v. Amrep Southwest Inc.*, 260 P.3d 414, 415 (N.M. 2011) (quoting *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000)). Unjust enrichment provides relief only where "a party cannot claim relief in contract and instead must seek refuge in equity." *Ontiveros*, 3 P.3d at 698-99. *See also Tom Growney Equip., Inc. v. Ansley*, 888 P.3d 992, 994 (N.M. Ct. App. 1994) (holding that unjust enrichment applies only where a contract does not exist and noting that the measure of damages "is significantly different from contract"). The Tenth Circuit has recognized that under New Mexico law, "the presence of a contract bars a claim for unjust enrichment." *Elliott*, 407 F.3d at 1117.

As part of their unjust enrichment claim, Plaintiffs see "to be paid lawfully, under the terms of their leases and state law, until said leases expire." *Doc. 4* at 17, ¶ 66. Plaintiffs accordingly admit their unjust enrichment claim is really just a reiteration of their first cause of action, seeking royalty payments pursuant to their existing leases. In response to Defendant's

Motion, Plaintiffs concede their claims are "grounded in breach of contract," but argue that their unjust enrichment claim is made in the alternative, in case the Court "determine[s] that the parties are not in privity of contract." *See Doc.* 44 at 33.

The Court finds Plaintiff's entitlement to royalty payments is governed by the existing contracts. *See Elliott*, 407 F.3d at 1117 ("contracts control how royalties are to be paid"). Because Plaintiffs have alleged that contracts providing for royalty payments exist, they cannot recover for unjust enrichment. Count VI, seeking damages for unjust enrichment will be dismissed.

### VII.   Plaintiffs Have Not Pled Facts Sufficient to Support Declaratory Judgment.

Together with their unjust enrichment claim, Plaintiffs also purport to seek a declaratory judgment. *See Doc. 4* at 17. Plaintiffs do not, however, plead the nature of their requested declaration. Instead, they assert they are "entitled to an order enjoining XTO for its current and historic payment methods and to order XTO to utilize a method of payment which results in Plaintiffs receiving an arm's length value of their hydrocarbons, without reduction for unlawful costs or charges." *Doc. 4* at 17, ¶ 67. They seek, in their prayer for relief, "a Declaratory Judgment governing, restraining, and enjoining XTO's activities." *Id.* at 19, ¶ 74.

The Declaratory Judgment Act empowers, but does not require, federal courts to hear claims for declaratory judgment. *See* 28 U.S.C. § 2201(a). *See also, e.g., Mid- Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980 (10th Cir. 2012) ("Because of the Act's use of the word 'may,' the Supreme Court has held it confers upon the courts the power, but not the duty, to hear claims for declaratory judgment."). Factors relevant to the Court's exercise of discretion in these cases include: (1) whether a declaratory judgment would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal

relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for race to res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.  *See Mid-Continent*, 685 F.3d at 980.

The Court agrees with Defendant that Plaintiffs appear to be pursuing injunctive rather than declaratory relief.  *See Doc. 28* at 42.  In any case, however, the Court cannot declare the parties' rights or enjoin Defendant without examining the language of the parties' alleged lease agreements.  As previously noted, *see* Part I *infra*, Plaintiffs have not pled sufficient facts regarding their alleged contractual rights and Defendants' alleged contractual obligations.  Thus, the Court must dismiss Plaintiffs' declaratory judgment claim for the same reasons it dismissed Plaintiffs' claim for breach of contract.

### VIII.   Plaintiffs Cannot Sustain Their Conversion Claim As a Matter of Law.

New Mexico law recognizes the tort of conversion as "the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made."  *Muncey v. Eyeglass World, LLC*, 289 P.3d 1255, 1262 (N.M. Ct. App. 2012) (quoting *Nosker v. Trinity Land Co.*, 757 P.2d 803, 807-08 (N.M. Ct. App. 1988)).  Plaintiffs premise their conversion claim upon Defendant's alleged "retention of the monies and profits resulting from the sale of Plaintiffs' hydrocarbons."  *See Doc. 4* at 18, ¶ 70.  Plaintiffs' conversion claim is therefore based on exactly the same facts as alleged in their breach of contract claim.

The Tenth Circuit has long held that where the facts alleged in support of a tort claim are "precisely" the same as those alleged in support of a contract claim, the tort claim will not lie. *See Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 24 (10th Cir. 1984) (noting that the parties had a contract defining their rights and duties, "thereby precluding any extracontractual tort duty"). As the Tenth Circuit has explained,

> [t]he effect of confusing the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law, would be to nullify a substantial part of what the parties bargained for—limited liability. Unless such bargains are against public policy (covered either by prohibitory statutes or well-defined, judge-made rules such as unconscionability), there is no reason in fact or law to undermine them. Indeed, it would be an unwarranted judicial intrusion into the marketplace. No reason appears to support such a radical shift from bargained-for duties and liabilities to the imposition of duties and liabilities that were expressly negated by the parties themselves when they decided to abandon their status as legal strangers and define their relationship by contract.

*Isler*, 749 F.2d at 23. *See also Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197, 1201 (10th Cir. 1988) (indicating that *Isler* stands for the proposition that "no tort duty can be imposed on a party where that party's same duties and rights are specifically defined by contract").

Plaintiffs attempt to distinguish their conversion claim from their breach-of-contract claim by arguing that the conversion claim is not meant to address conversion of money, but rather the hydrocarbons themselves. *See Doc. 44* at 37. This is not a meaningful distinction. The parties' contract governs Defendant's liability, if any, for the sale of hydrocarbons, and Plaintiffs' conversion claim must be dismissed.

### IX. Class Action Claims Cannot Survive.

Defendant XTO contends that Plaintiffs's class action claims cannot survive for the same reasons that their substantive claims must be dismissed—because Plaintiffs have failed to

adequately plead their class action claims under the *Twombly/Iqbal* standard.  *See Doc. 28* at 46-47.  Plaintiffs contend they have met the pleading requirements of Fed. R. Civ. P. 23.  *See Doc. 44* at 38.

Although the Tenth Circuit has not specifically addressed this issue, Defendant XTO cites decisions from the New Jersey and Pennsylvania, holding that class allegations must meet the plausibility requirement of *Twombly/Iqbal*.  *See Doc. 28* at 46-47 (collecting cases).  In *Nicholas v. CMRE Fin. Serv.*, the United States District Court for the District of New Jersey dismissed class allegations after finding that "the Complaint does not set forth a sufficient factual basis for its class allegations; indeed, the class allegations under Rule 23 in the Complaint are phrased as legal conclusions based on the language of the class action pleading requirements."  Civil Action No. 08-4857 (JLL), 2009 WL 1562275, at *4 (D.N.J. June 11, 2009).  *See also Hodczak v. Latrobe Specialty Steel Co.*, Civil Action No. 08-649, 2009 WL 911311, at *9 (W.D. Pa. Mar. 31, 2009); *Smith v. Lyons, Doughty & Veldhuius, P.C.*, Civil Action No. 07-5139, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008).

At least one district court judge within the Tenth Circuit has held to the contrary, determining that the *Twombly/Iqbal* standard does not properly apply to class action allegations.  *See Griffin v. Home Depot USA, Inc.*, Case No. 11-2366-RDR, 2012 WL 38647, at *3 (D. Kan. Jan. 9, 2012) (declining to apply *Twombly/Iqbal* analysis to method of proving class action claim).  The Kansas court's approach finds support in legal literature as well.  *See* Robin J. Effron, *The Plaintiff Neutrality Principle: Pleading Complex Litigation in the Era of* Twombly *and* Iqbal, 51 Wm. & Mary L. Rev. 1997, 2019 (2010) ("the formation of a plaintiff class is not itself a cause of action or a claim for which relief can be granted").  Both the Kansas court and Ms. Effron in her law review article reference the holding of the United States Supreme Court

17

that "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action . . . but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

The Court need not determine which line of reasoning is more persuasive in the present case because the class asserted by Plaintiffs has not been certified. *See, e.g., Moniz v. Cox*, Case No. 11-1790, at *5, 2013 WL 216070 (6th Cir. Jan. 22, 2013) (holding that motion for class certification was properly denied as moot given the appropriate dismissal of the representative's complaint for failure to state a claim); *Acquisto Secure Horizons ex rel. United Healthcare Ins. Co.*, Case No. 12-11883, 2013 WL 272758, at *2, n.3 (11th Cir. Jan. 24, 2013) (where district court's Rule 12 dismissal of class representative's substantive claims was appropriate, "we need not discuss the issue of class certification"); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005) (finding issue of class certification moot where the court granted summary judgment as to the underlying claims of the class representatives). Moreover, Plaintiffs are unable to maintain a class action given the dismissal herein of all of their substantive claims. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative, it is essential that a plaintiff . . . be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents"); *Rector v. City and County of Denver*, 348 F.3d 935, 949-50 (2003).

## Conclusion

For the reasons set forth herein, the Court will grant Defendant's Motion and dismiss Plaintiff's Complaint.

**IT IS THEREFORE ORDERED** that Defendant XTO Energy, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint for Underpayment of Oil and Gas Royalties *(Doc. 28)* is **GRANTED** without prejudice.

**IT IS FURTHER ORDERED** that, given the Court's dismissal of Plaintiff's Complaint for failure to state a claim, Plaintiffs' Objections to the Memorandum Decision and Order Granting Defendant's Motion to Stay Discovery *(Doc. 53)* are moot.

**IT IS FURTHER ORDERED** that, based on the dismissal of Plaintiffs' Complaint for failure to state a claim, Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court *(Doc. 58)* is moot.

**UNITED STATES DISTRICT COURT JUDGE**